1
2
3
4
5
6
7

8                    **UNITED STATES DISTRICT COURT**

9                      EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., ) | 1:11-cv-00408 OWW GSA |
| ) | |
| Plaintiff, ) | **FINDINGS AND RECOMMENDATIONS** |
| ) | **REGARDING PLAINTIFF'S MOTION** |
| v. ) | **FOR DEFAULT JUDGMENT** |
| ) | |
| ANTONIO HERNANDEZ, dba THE CLUB ) | (Document 10) |
| BAR LA BAMBA, and SAMUEL LOPEZ, ) | |
| dba THE CLUB BAR LA BAMBA, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

17

18         On June 24, 2011, Plaintiff J & J Sports Productions, Inc. ("Plaintiff") filed the present

19   Application for Default Judgment by the Court against Defendants Antonio Hernandez and

20   Samuel Lopez, individually and doing business as The Club Bar La Bamba.  (Doc. 10.)  A

21   hearing was held on July 29, 2011, before the Honorable Gary S. Austin.  Thomas P. Riley, Jr.

22   appeared telephonically on behalf of Plaintiff.  No appearance was made by or on behalf of

23   Defendants.

24                              **BACKGROUND**

25         Plaintiff filed the instant action on March 9, 2011.  (Doc. 1.)  Defendants were served

26   with the summons and complaint on May 15, 2011.  (Docs. 5-6.)  The complaint alleges

27

28                                      1

1  violations of Title 47 of the United States Code sections 605 and 553.  Plaintiff also alleges a

2  state law claim of conversion and a violation of California Business and Professions Code

3  section 17200, *et seq*.

4      Defendants have not answered the complaint or otherwise appeared in this action.  (Doc.

5  7.)  On June 17, 2011, the Clerk of the Court entered default against Defendants Antonio

6  Hernandez and Samuel Lopez.  (Docs. 8-9.)

7      Plaintiff filed the instant application for default judgment on June 24, 2011.  Plaintiff

8  requests that the Court enter default judgment against Defendant in the amount of $111,800.00.

9  Despite being served with the application by United States Mail, Defendants have not responded

10 to the application.

## LEGAL STANDARD

12     Federal Rule of Civil Procedure 55(b)(2) provides that judgment may be entered:

13         By the Court.  In all other cases, the party must apply to the court for a
           default judgment.  A default judgment may be entered against a minor or
14         incompetent person only if represented by a general guardian, conservator, or
           other like fiduciary who has appeared.  If the party against whom a default
15         judgment is sought has appeared personally or by a representative, that party or its
           representative must be served with written notice of the application at least 3 days
16         before the hearing.  The court may conduct hearings or make referrals--preserving
           any federal statutory right to a jury trial--when, to enter or effectuate judgment, it
17         needs to:
                   (A) conduct an accounting;
18                 (B) determine the amount of damages;
                   (C) establish the truth of any allegation by evidence; or
19                 (D) investigate any other matter.

20 "Upon default, the well-pleaded allegations of the complaint relating to liability are taken as

21 true."  *Dundee Cement Co. v. Highway Pipe and Concrete Products*, 722 F.2d 1319, 1323 (7th

22 Cir. 1983); *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-918 (9th Cir. 1987).

23     Factors which may be considered by courts in exercising discretion as to the entry of a

24 default judgment include: (1) the possibility of prejudice to the plaintiff; (2) the merits of

25 plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake

26 in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default

27

28                              2

1  was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil

2  Procedure favoring decisions on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-1472 (9th Cir.

3  1986).

4  **DISCUSSION**

5  Service of the summons and complaint upon Defendants was effected on May 15, 2011.

6  True and correct copies of the Proof of Service were filed with this Court on June 6, 2011.

7  (Docs. 5-6).  Defendants failed to respond to the complaint or otherwise appear in this action.

8  The Clerk of the Court entered default against both Defendants on June 17, 2011.  (Doc. 8-9.)

9  Defendants are not infants or incompetent persons, and are not in the military service or

10  otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of 1940.  (*See* Doc. 10 at ¶

11  1 & 10-2 at ¶ 3.)

12  Plaintiff seeks judgment pursuant to Title 47 of the United States Code section 605

13  against Defendants for unlawfully intercepting, receiving and exhibiting *"The Event": The*

14  *Manny Pacquiao v. Joshua Clottey, WBO Welterweight Championship Fight Program* on March

15  13, 2010, at their establishment in Corcoran, California.  Plaintiff requests enhanced statutory

16  damages in the amount of $110,000.00 and $1,800.00 for state law conversion.

17  The relevant provisions of Title 47 of the United States Code section 605, which address

18  unauthorized publication or use of wire or radio communications, state:

19  (a) . . . no person receiving, assisting in receiving, transmitting, or assisting
in transmitting, any interstate or foreign communication by wire or radio shall
20  divulge or publish the existence, contents, substance, purport, effect, or meaning
thereof, except through authorized channels of transmission or reception, (1) to
21  any person other than the addressee, his agent, or attorney. . .. No person not being
authorized by the sender shall intercept any radio communication and divulge or
22  publish the existence, contents, substance, purport, effect, or meaning of such
intercepted communication to any person. No person not being entitled thereto
23  shall receive or assist in receiving any interstate or foreign communication by
radio and use such communication (or any information therein contained) for his
24  own benefit or for the benefit of another not entitled thereto. No person having
received any intercepted radio communication or having become acquainted with
25  the contents, substance, purport, effect, or meaning of such communication (or
any part thereof) knowing that such communication was intercepted, shall divulge
26  or publish the existence, contents, substance, purport, effect, or meaning of such
communication (or any part thereof) or use such communication (or any

27

28  3

1    information therein contained) for his own benefit or for the benefit of another not
2    entitled thereto.

3    Additionally, the aggrieved party is authorized to obtain statutory damages of "not less than
4    $1,000 or more than $10,000, as the court considers just" for each violation.  47 U.S.C. §
5    605(e)(3)(C)(i)(II).  The court may award enhanced damages up to $100,000 for each violation if
6    it finds the violation was willfully committed for commercial advantage or private financial gain.
7    47 U.S.C. § 605 (e)(3)(C)(ii).

8         Plaintiff attests that it is a closed-circuit distributor of sports and entertainment
9    programming that purchased and retained the commercial exhibition licensing rights to the
10   program at issue.  Plaintiff marketed the sub-licensing (commercial exhibition) rights in the
11   program to its commercial customers.  (Doc. 10-4 at ¶ 3.)  Plaintiff contends that persistent signal
12   piracy of its programming costs the company, its customers and the community millions of
13   dollars annually.  (Doc. 10-4 at ¶ 12.)  Plaintiff believes this results in part from the perceived
14   lack of significant consequences (including nominal or minimal damage awards by the courts
15   who hear its cases) for such unlawful interception and exhibition by the commercial signal
16   pirates.  (Doc. 10-4 at ¶ 12.)  As such, Plaintiff requests the maximum allowance for statutory
17   violations, totaling $110,000.00.  (Doc. 10-4 at ¶ 13.)

18        Here, the summons and complaint were served upon Defendants Antonio Hernandez and
19   Samuel Lopez, individually and doing business as The Club Bar La Bamba, by substitute service
20   on May 15, 2011.  The service was effected pursuant to subdivision (h)(1) of Rule 4 of the
21   Federal Rules of Civil Procedure, which provides as follows:

22        Unless federal law provides otherwise or the defendant's waiver has been filed, a
     domestic or foreign corporation, or a partnership or other unincorporated
23   association that is subject to suit under a common name, must be served:
          (1) in a judicial district of the United States:
24            (A) in the manner prescribed by Rule 4(e)(1) for servicing an individual;
     or
25            (B) be delivering a copy of the summons and of the complaint to an
     officer, a managing or general agent, or any other agent authorized by
26   appointment or by law to receive service of process and - if the agent is one
     authorized by statute and the statute so requires - by also mailing a copy of each to
27

28                                              4

the defendant; or
(2) at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i).

Rule 4(e) provides the following:

**Serving An Individual Within a Judicial District of the United States**. Unless federal law provides otherwise, an individual - other than a minor, an incompetent person, or a person whose waiver has been filed - may be served in a judicial district of the United States by:
(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
(2) doing any of the following:
(A) delivering a copy of the summons and of the complaint to the individual personally;
(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age or discretion who resides there; or
(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

In particular here, the summons and complaint were served upon Sonia Hernandez, assistant manager of The Club Bar La Bamba, located at 927 Whitley Avenue in Corcoran, California, on May 15, 2011, at 2:15 p.m.  Sonia Hernandez is a forty-two year old Hispanic female, five feet four inches tall, weighing 160 pounds, with black hair and brown eyes.  (*See* Docs. 5-6.)  Thus, it appears that Defendants were properly served via valid substitute service. Additionally, it appears that default was properly entered against both Defendants for their failure to respond to the summons and complaint.  Further, it appears the complaint is sufficiently well-pled.  By their default, Defendants have admitted to willfully violating the referenced statutes for purposes of commercial advantage.

Having in mind that the deterrence of future violations is an important objective of the statutes at issue here, the Court considers the following facts.

Defendants' establishment is bar; its unique features include a pool table and a dance floor complete with a dance pole.  Everett Rabbon, Plaintiff's investigator, who visited the establishment between 8:09 and 9:40 p.m. on March 13, 2010, noted that The Club Bar La

5

Bamba "rates poor."  Notably, prior to entering the bar, Rabbon observed "an A-frame easel in the middle of the sidewalk in front the business advertising" the program.  Additionally, Rabbon was required to pay a ten dollar cover change to an adult male wearing a sport coat, whom was accompanied by another adult male dressed in a black jacket and "BDU type pants that acted as security."  With regard to exhibition of the program, Rabbon noted that there were two LCD/PLASMA type televisions, including a Vizio brand television, over the bar area.  An older portable television was located on a stand facing the entrance to the bar, and a smaller fourth television was set on a stack of milk crates on the dance floor.  On that date, Rabbon conducted three head counts of persons present in the bar: 42/42/43. (Doc. 10-3 at 2-3.)  Photographs of the exterior of the establishment depict a small, fairly well maintained older building on Whitley Avenue in Corcoran.  (Doc. 10-3, exhibits.)

In light of the foregoing, this Court will recommend that the maximum statutory damages be awarded, to wit: $10,000.00.  Moreover, because Defendants' actions were willful, coupled with the fact that the establishment collected a ten dollar cover charge and advertised by way of a sign in front of the business, and wherein the pirated program was exhibited to about three dozen patrons present, the Court will also recommend that enhanced damages of $36,000.00 be awarded.

Additionally, Plaintiff seeks $1,800.00 in conversion damages, the value of the property at the time of the conversion.  (Doc. 10-1 at 20-21; Doc. 10-4, Ex. 2.)  Under California law, "[c]onversion is the wrongful exercise of dominion over the property of another.  The elements of a conversion are (1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Greka Integrated, Inc. v. Lowrey*, 133 Cal.App.4th 1572, 1581, 35 Cal.Rptr.3d 684 (2005) (internal quotation marks omitted); *see also G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc*., 958 F.2d 896, 906 (9th Cir.1992).  "Because conversion is a strict liability tort, questions of the defendant's good faith, lack of knowledge, motive, or intent

are not relevant." *Gilman v. Dalby*, 176 Cal.App.4th 606, 615 n.1, 98 Cal.Rptr.3d 231 (2009). Exclusive right to distribute a broadcast signal to commercial establishments constitutes a "right to possession of property" for purposes of conversion. *See Don King Prods./Kingvision v. Lovato*, 911 F.Supp. 419, 423 (N.D. Cal. 1995); *see also DIRECTV, Inc. v. Pahnke*, 405 F.Supp.2d 1182, 1189 (E.D. Cal. 2005) (concluding that the "right to distribute programming via satellite" constituted a "right to possession of personal property" for purposes of a conversion claim under California law).

Here, Plaintiff was granted the exclusive domestic commercial exhibition licensing rights to the program at issue, and thus had the right to possession of the property at the time of the conversion. (Doc. 10-4, ¶ 3.)  Next, because Defendants did not legally purchase the pay-per-view programming, the exhibition of the fight in The Club Bar La Bamba on Saturday, March 13, 2010, constituted Defendants' conversion by a wrongful act or disposition of property rights. (Doc. 10-4, ¶¶ 6-7.)  Finally, the rate card for "*The Event*": *The Manny Pacquiao v. Joshua Clottey, WBO Welterweight Championship Fight Program*, for an establishment with minimum seating capacity between zero and 100 persons, including the size of Defendants' establishment, indicates the sub-license fee for the program would have been $1,800.00. (Doc. 10-4, ¶ 8 & Ex. 2.)  Thus, Plaintiff is entitled to damages for conversion in the amount of $1,800.00.

In sum, the Court finds the possibility of prejudice to Plaintiff in the absence of default judgment would be significant.  Further, Plaintiff's complaint is sufficient and serves to establish the merits of its substantive claims.  While the money at stake in this action is significant, it should not preclude Plaintiff's remedy, and in fact is delineated by statute.  Additionally, in light of Defendants' failure to respond to proper service of the summons and complaint, there is little possibility of a dispute concerning material facts, nor is there any indication that either Defendant's default was due to excusable neglect.  While there exists a strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits, this policy should not serve to preclude Plaintiff from the remedy it seeks.  *Eitel v. McCool*, 782 F.2d at 1471-1472.

**RECOMMENDATIONS**

Based on consideration of the declarations, pleadings and exhibits to the present application, the Court RECOMMENDS as follows:

1. Plaintiff's application for default judgment be GRANTED;

2. Judgment be entered in this action AGAINST Defendants Antonio Hernandez and Samuel Lopez; and

3. Damages in the total amount of $47,800.00 be AWARDED as follows:

    a. For the violation of 47 U.S.C. § 605(e)(3)(C)(i)(II), the sum of $10,000.00;

    b. For the violation of  47 U.S.C. § 605 (e)(3)(C)(ii), the sum of $36,000.00; and

    c. For the conversion of Plaintiff's property, the sum of $1,800.00.


These findings and recommendations are submitted to the district judge assigned to this action, pursuant to Title 28 of the United States Code section 636(b)(1)(B) and this Court's Local Rule 304.  Within fifteen (15) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to Title 28 of the United States Code section 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

**Dated:   July 29, 2011**          **/s/ Gary S. Austin**
                                             UNITED STATES MAGISTRATE JUDGE

8